UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Julio Rivera, | ) | No. 13 Cv-9275 |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| Anthony W. Batts, individually and as Police | ) | |
| Commissioner, agent and Chief Officer of the City | ) | |
| of Baltimore Police Department, Two (2) or more | ) | |
| Unidentified Officers and Agents of the City of | ) | |
| Baltimore Police Department, Baltimore Police | ) | Judge Durkin |
| Department, a subdivision of the State of Maryland, | ) | |
| and the City of Baltimore, Maryland, a municipal | ) | Magistrate Finnegan |
| corporation and body politic, | ) | |
|     Defendants. | ) | Jury Trial demanded |

**JURISDICTIONAL MEMORANDUM**

Plaintiff submits pursuant to this Court's Order of March 7, 2014 his Jurisdictional Memorandum as follows:

**Factual Predicate**

Plaintiff seeks relief against Defendants, all of which are public entities or law enforcement officers in the City of Baltimore, State of Maryland, for false arrest and false imprisonment under color of law and without due process of law, entitling Plaintiff to recover damages pursuant to Title 42 USC Section 1983. The stated basis for federal jurisdiction is federal question jurisdiction, Title 28 U.S.C. Sec. 1331. The Court ordered Plaintiff to submit a Jurisdictional Memorandum particularly directed to this Court's exercise of in personam jurisdiction of the defendants, all of whom are law enforcement officers, public officials (Defendant Police Commissioner Anthony W. Batts) or public entities situated within or

constituting the State of Maryland.

Within Plaintiff's information and belief, none of the Defendants are domiciled within Illinois or conduct business or operations regularly within the State of Illinois.  The basis for Plaintiff invoking this Court's jurisdiction is Defendants' causing intentionally a tortious injury which had effects within the State of Illinois, including injury to Plaintiff, to his paramour (referred to inaccurately as his "wife" in the Complaint) and his minor child, specifically by incarcerating and detaining Plaintiff for a period of two and one-half months, October 12, 2012 until approximately December 27, 2012.  (*Complaint*, paras. 4, 5, 15, 20).  Plaintiff and his paramour and child are all residents and domiciliaries of the City of Chicago, State of Illinois. *Complaint*, paras. 4, 5).  None of them have any connection to the State of Maryland or defendants apart from Plaintiff driving his interstate commercial freight truck in the State of Maryland on and immediately prior to the date of the arrest in this case, and being subsequently jailed and unlawfully detained, and prevented from returning home and to his job, in the State of Illinois, for the succeeding two and one-half months within the State of Maryland by Baltimore, Maryland law enforcement officers.  (*Complaint*, paras. 5, 6, 12).

**Analysis**

I.      **General Principles**

This Court's exercise of personal jurisdiction of the Defendants in this case is prefixed on appropriate exercise of "long-arm" jurisdiction as defined by Illinois law.  "A federal court has jurisdiction … only if a court of the state in which the federal court is sitting would have jurisdiction. Fed.R.Civ.P. 4(e) and 4(d)(7)."  *Lakeside Bridge & Steel Co.* v. *Mountain State Constr. Co.,* 597 F.2d 596 (7th Cir. 1979).  Pursuant to the Illinois long-arm statute, Ch. 735

ILCS Section 5/2-209(c), "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Ch. 735 ILCS Section 5/2-209(c);  *Keller v. Henderson*, 359 Ill. App. 3d 605, 610-11 (2005).  Thus jurisdiction under the Illinois long-arm statute is co-extensive with that accorded under the United States Constitution and federal due process principles.

The essential formulation of the reach of long-arm jurisdiction dictates that exercise of personal jurisdiction of defendants is unlawful unless they have "purposefully availed themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).  The Supreme Court has stated, however, that "[t]here may be exceptions, say, for instance, in cases involving an intentional tort." *J. McIntyre Macinery v. Nicastro*, 131 S.Ct. 2780, 2785, 180 L.Ed.2d 765 (2011).

The Eighth Circuit Court of Appeals dealt with a similar stream of commerce issuing in finding that exercise of long-arm jurisdiction of foreign tortfeasor (a Swedish manufacturer) who placed a dangerous or defective product into the United States marketplace could be sued in the Missouri District Court since the injury occurred there:

"The Supreme Court has rejected "talismanic" formulas to personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Rather, we must carefully consider the facts of each case to assess the nature of the contacts between the defendant and the forum state. *See id.* at 486, 105 S.Ct. 2174. The factors we weigh include:  the burden on the defendant, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 374 (8th Cir.1990) (citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (part II.B., joined by eight Justices))."

*Clune v. Alimak AB*, 233 F.3d 538, 540 (8th Cir. 2000).

## II.     Intentional Tort

The Seventh Circuit Court of Appeals has dealt with this issue in the context of intentional torts in *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012).

"We explained in *Tamburo* [*v. Dworkin,* 601 F.3d 693, 700 (7th Cir.2010)] that the Supreme Court's important decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), provides useful contours in conducting the purposeful-direction analysis in a tort case. In *Calder* the Court held that a California court could exercise personal jurisdiction over a reporter and editor for the *National Enquirer,* Florida residents who had written and edited an allegedly libelous article concerning an actress who was a California resident. *Id.* at 785-86, 104 S.Ct. 1482. The Court turned aside the defendants' arguments that they were not responsible for the tabloid's distribution in California and had no stake in its publication there, holding instead that their intentional and allegedly tortious actions were expressly aimed at California. *Id.* at 789, 104 S.Ct. 1482. Our opinion in *Tamburo* distilled three requirements from *Calder* for determining whether conduct was 'purposefully directed' at the forum state: '(1) intentional conduct (or `intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt — that is, the plaintiff would be injured — in the forum state.' 601 F.3d at 703. If the plaintiff makes these three showings, he has established that the defendant 'purposefully directed' his activity at the forum state."

*Felland v. Clifton* (slip op. 11-1839 pages 13-14).

In *Felland*, the defendant, an Arizona real estate developer, made a series of false representations promising delivery of condominium property in Mexico, and subsequently threatened litigation against the plaintiff if his delays in delivering the condominiums were revealed to the public, all by means of telephone calls, letters and electronic communication to plaintiff in the State of Wisconsin.  *Id*.  In finding that the defendant had sufficient minimum contacts to expose him to suit in the Wisconsin District Court, the Court emphasized that "there is no doubt that [defendant] Clifton knew the alleged harm would be felt in Wisconsin." *Id*.

In the case at bar, Defendants, according to the Complaint, were advised immediately upon arresting Plaintiff that he was an Illinois resident, making their continued wrongful

4

detention of him the type of conduct which would be felt in the State of Illinois, by his absence from his Illinois home, and from his family in Illinois.

The allegations of the Complaint make it clear that Defendants' conduct was intentional – there is no cause of action under Section 1983 for unintentional violations of civil rights.

That the conduct is "expressly aimed" at the State of Illinois is implicit in Defendants' awareness of Plaintiff's status as an Illinois domiciliary, and his absence from his home and his family as a consequence of the wrongful detention and imprisonment. The Defendants' success in incarcerating Plaintiff tortiously and intentionally for two and one-half months deprived Plaintiff of his return to his home and family. It would be an outrageous absurdity if Defendants' false imprisonment of Plaintiff proved to be precisely the device by which they elude "minimum contacts" with the State of Illinois. In the circumstances of this case, Defendants should be found to have been aware that the consequences of their false imprisonment of Plaintiff would be felt in the State of Illinois, and that the false imprisonment of Plaintiff, who is explicitly a resident of Illinois, was expressly aimed at the State of Illinois for jurisdiction purposes.

## Conclusion

Based upon the Seventh Circuit's decision in *Felland v. Clifton* and the Supreme Court's decision in *Calder v. Jones*, Plaintiff submits that the facts averred in the Complaint, amounting to intentional false imprisonment and violation actionable under Section 1983, are sufficient to establish Defendants' minimum contacts with the State of Illinois for the purpose of fixing personal jurisdiction of the Defendants in this Court under Fed. Rule Civ. P. 4.

        Respectfully Submitted,

        Julio Rivera,


/S/    Michael J. Greco_____
        Michael J. Greco, Attorney at Law
        175 W. Jackson Blvd., Suite 1600
        Chicago, Illinois 60604
        312 222-0599
        Atty. No. 06201254



        Michael J. Greco, Attorney at Law
        175 W. Jackson Blvd., Suite 1600
        Chicago, Illinois 60604
        312 222-0599
        Atty. No. 06201254

## **CERTIFICATE OF SERVICE**

  I, Michael J. Greco, Attorney at Law, that I served this **JURISDICTIONAL MEMORANDUM** through the electronic case filing system of the United States District Court for the Northern District of Illinois' ECF System on March 28, 2014.

          By: /s/____Michael J. Greco_____
             Michael J. Greco, Attorney for Plaintiff
             Attorney at Law
             175 W. Jackson Blvd., Suite 1600
             Chicago, Illinois 60604